# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DERRICK WEI CHEN GAN,

      Petitioner-Plaintiff,

v.

CHAD WOLF, et al.,

      Respondents-Defendants.

Case No.: 2:20-cv-00947-APG-NJK

**Order**

      Petitioner Derrick Wei Chen Gan, a counseled immigration detainee, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1.  Gan seeks to be released from custody so he can self-deport to Singapore, escorted by a private detective hired by his family.  I deny Gan's petition because his continued detainment is not arbitrary, the respondents have legitimate concerns about Gan self-deporting due to his schizophrenia, and the respondents have arranged for a deportation flight on July 12, 2020.

## I.    Background

      Gan is a 27-year old Singaporean national who entered the United States under the Visa Waiver Program (VWP)[1] on January 12, 2020.[2] ECF No. 13 at 2.  He has been detained by the United States Immigration and Customs Enforcement (ICE) division of the Department of

---

[1] Entrance via the VWP "authorizes the Attorney General and Secretary of State to waive the visa requirements for entry to the United States for aliens that are nationals of certain designated countries, and who meet a series of statutory requirements." *Bingham v. Holder*, 637 F.3d 1040, 1042 (9th Cir. 2011).

[2] Gan alleges that he entered the United States in January 2019, not January 2020. ECF No. 14 at 3.

1  Homeland Security (DHS) since March 31, 2020. *Id.* at 3.  He is currently housed at the

2  Henderson Detention Center (HDC). *Id.*

3          **a.**        **Criminal proceedings**

4          Gan was arrested by the Las Vegas Metropolitan Police Department (Metro) on March

5  15, 2020[3] for attempting to kidnapping a minor. ECF No. 13 at 2.  On April 7, 2020, he was

6  convicted of misdemeanor assault. *Id.* at 3.  Gan alleges that while outside of a casino, he patted

7  a child on the head and the child's parents reported him to hotel security, who contacted Metro.

8  ECF No. 1-1 at 6-7.  Gan alleges that he was "suffering a schizophrenic episode" at the time. *Id.*

9  at 6.  Gan was transferred to Lakes Crossing Center, a state-run maximum-security psychiatric

10  facility following his arrest. *Id.* at 7.

11          **b.**        **Federal habeas proceedings**

12          Gan commenced this habeas proceeding on May 26, 2020. ECF No. 1.  His petition is

13  based on "[n]eedless delayed removal, and unnecessary prolonged detention within [a] facility

14  where COVID 19 has been detected." *Id.* at 2.  He "has requested and agreed to expedited

15  removal," and his "family in coordination with the Consulate of Signapore [sic] has facilitated

16  travel arrangements for [him] to depart the United States immediately at their expense and not at

17  the government's expense." *Id.*  Gan alleges that because of his schizophrenia "[h]is continued

18  detention during the COVID-19 Pandemic . . . cause[s] him undue suffering and unwarranted

19  risk of infection." *Id.*

20          Gan presents three grounds for relief: (1) his detention violates his Fifth Amendment

21  right to substantive due process, as his continued detention in light of COVID-19 is unreasonable

22  because he does not have recourse for administrative review; (2) his detention violates his Eighth

23   

---

[3] Gan alleges that he was arrested on May 15, 2019. ECF No. 14 at 3.

Amendment right to be free from cruel and unusual punishment, as his continued detention unnecessarily places him at risk of contracting COVID-19; and (3) the respondents' decision to continue to detain him is arbitrary and capricious in violation of the Administrative Procedures Act (APA). *Id.* at 6. Gan asks me to grant a writ directing ICE to release him to self-deport or that ICE coordinate his departure by escorting him to the plane so that he can depart. *Id.* at 7. Gan also requests that I award him attorneys' fees. ECF No. 1-1 at 22.

## II.   Governing law

### a.   Federal habeas jurisdiction

A writ of habeas corpus is available when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008) (holding that a non-citizen petitioner held in custody pursuant to removal proceedings may "bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus"). "Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 678 (2001) (explaining that "[s]tatutory changes in the immigration law left habeas untouched as the basic method for obtaining review of continued custody after a deportation order becomes final").

The respondents argue that Gan's petition challenges the conditions of his confinement so his claim must be brought as a civil rights claim. ECF No. 13 at 6 (citing *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (explaining that "the writ of habeas corpus is limited to attacks upon the legality or duration of confinement")); *see also Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016) ("[P]risoners may not challenge mere conditions of confinement in habeas corpus."). But as another federal judge explained in a similar case addressing COVID-19

concerns within a 28 U.S.C. § 2241 petition, "Petitioner is not challenging a specific condition of his confinement but instead claims that his confinement itself violates his due process rights—a direct challenge to the validity of his detention." *Habibi v. Barr*, No. 20-cv-00618-BAS-RBB, 2020 WL 1864642, at *2 n.2 (S.D. Cal. Apr. 14, 2020).  In that case, the judge was not persuaded by "the Government's position that the [28 U.S.C. § 2241] petition is an improper vehicle for Petitioner's claims." *Id.*  I agree and assume, for purposes of the present petition, that Gan has properly presented his 28 U.S.C. § 2241 petition. *See also Calderon v. Barr*, No. 2:20-cv-00891-KJM-GGH, 2020 WL 2394287, at *4 (E.D. Cal. May 12, 2020) ("Although uneasy with the habeas corpus vehicle to decide conditions of confinement issues, the undersigned will ultimately find habeas corpus subject matter jurisdiction to be proper.").

### b.  Constitutional considerations

"[W]hen the State takes a person into its custody and holds them there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).  For people convicted of a crime, this duty arises under the Eighth Amendment and is violated upon a showing of "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Immigration detention is civil confinement, even if the detainee has a prior criminal conviction. *Zadvydas*, 533 U.S. at 690. The government's duty to oversee the welfare of federal civil detainees arises under the due process clause of the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Youngberg v. Romero*, 457 U.S. 307, 315-16 (1982).

The Fifth Amendment requires that civil detainees "cannot be subjected to conditions that 'amount to punishment.'" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v.*

1  *Wolfish*, 441 U.S. 520, 535 (1979)).  Thus, "civilly detained persons must be afforded more

2  considerate treatment and conditions of confinement than criminals whose conditions of

3  confinement are designed to punish." *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012) (internal

4  quotation marks and citations omitted).

5  **III.**     **Gan has not demonstrated grounds for immediate release due to COVID-19**

6          Gan contends that social distancing—"the only viable option to mitigate the spread of"

7  COVID-19—is nearly impossible at HDC. ECF No. 1-1 at 10.  He thus contends that his

8  continued civil detention is placing him in potential harm of contracting COVID-19 and

9  suffering severe illness or death. *Id.* at 14, 18.

10         The respondents contend that no HDC detainee or employee has tested positive for

11  COVID-19 and that ICE and HDC have instituted practices to combat the risk of COVID-19.

12  ECF No. 13 at 3.  Specifically, the respondents explain the following preventative protocols they

13  have instituted: (1) employee self-check stations for COVID-19 symptoms, (2) staff is required

14  to wear personal protective equipment; (3) new inmate/detainee screenings and possible

15  quarantining; (4) increased cleaning and sanitation; (5) discontinuing in-person visits;

16  (6) education regarding COVID-19, social distancing, and hygiene; and (7) implementing social

17  distancing practices at mealtime, at the phone bank, and in the dayroom. *Id.* at 4-5.  The

18  respondents also contend that Gan's age and diagnosis of schizophrenia do not render him at

19  high risk for COVID-19. *Id.* at 5.

20         Gan has not alleged a constitutional violation. *See, e.g.*, *Dawson v. Asher*, No. C20-

21  0409JLR-MAT, 2020 WL 1304557, at *2 (W.D. Wash. March 19, 2020) ("Plaintiffs do not cite

22  to authority, and the court is aware of none, under which the fact of detention itself becomes an

23  'excessive' condition solely due to the risk of a communicable disease outbreak—even one as

1  serious as COVID-19.").  While the number of COVID-19 positive tests have increased in the

2  general population of the state, there apparently have been no confirmed COVID-19 case at

3  HDC.  While an outbreak at HDC is still possible, the government has instituted numerous

4  measures to prevent and respond to an outbreak.  These measures demonstrate that the

5  government is fulfilling its "responsibility for [Gan's] safety and general well-being." *DeShaney*,

6  489 U.S. at 199-200.

7  **IV.     Gan fails to demonstrate that his pre-release detention is arbitrary or unreasonable**

8          The respondents contend that in light of Gan's schizophrenia and arrest record, it has

9  determined that he will be escorted by ICE officers to Singapore to ensure (1) compliance with

10  the administrative order and (2) public safety on the flight. ECF No. 13 at 3.  On April 9, 2020,

11  ICE requested that the Singapore consulate issue a travel document allowing Gan to return to

12  Singapore. *Id.* at 3.  On April 22, 2020, the Singapore consulate issued the necessary document.

13  *Id.*  ICE attempted to schedule a direct flight from the United States to Singapore for Gan and the

14  escorting officers, but all such flights were canceled due to COVID-19 and flights would not

15  resume until July of 2020. *Id.*  ICE has now scheduled a flight for July 12, 2020. *Id.*

16          Although Gan does not appear to dispute these facts, he contends that the respondents'

17  concerns would be alleviated by his plan to have a private detective hired by his family escort

18  him to Singapore. ECF No. 14 at 7.

19          Under the VWP, an alien waives his or her right "to contest, other than on the basis of an

20  application for asylum, any action for removal of the alien." 8 U.S.C. § 1187(b)(2); *see also*

21  *Nicusor-Remus v. Sessions*, 902 F.3d 895, 896-97 (9th Cir. 2018) ("The Department of

22  Homeland Security ("DHS") determines whether a VWP entrant is removable 'without referral

23  of the alien to an immigration judge for a determination of deportability.'").  The repatriation

provision of the VWP provides that "[t]he government of the country accepts for repatriation any citizen . . . against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal." 8 U.S.C. § 1187(c)(2)(E).  But this does not "create[ ] any duty for the United States or any right for any alien with respect to removal or release," nor does it "give[] rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien." *Id.*  Thus, Gan has no right to compel his release.  Indeed, he acknowledges that "expedited removal is processed under [the respondents'] discretion." ECF No. 1-1 at 14.

Based on the respondents' representations that its efforts to deport Gan sooner were blocked by the COVID-19 pandemic, they have not abused their discretion or acted unreasonably in waiting until July 12, 2020 to return Gan to Singapore. *See Zadvydas*, 533 U.S. at 679 (finding that the post-removal-period detention statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States").  Nor have the respondents abused their discretion or acted unreasonably in having an escort for Gan.  Although Gan asserts that his "conviction [was] for the most inconsequential misdemeanor imaginable," ECF No. 1-1 at 12, he was originally charged with attempted kidnapping of a minor, which came about during a schizophrenic episode.  Thus, his continued detention is not arbitrary and it does not violate "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

**V.      Gan's request for attorneys' fees**

Gan requests an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.  Because Gan's petition lacks merit, I decline to award him attorneys' fees.

I THEREFORE ORDER that Gan's Petition for A Writ of Habeas Corpus Under 28 U.S.C. § 2241 **(ECF No. 1) is DENIED**.

I FURTHER ORDER the Clerk of the Court to enter judgment accordingly and close this case.

Dated: June 25, 2020

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE